IN THE COURT OF APPEALS OF THE STATE OF WASHINGTON
DIVISION THREE

| | | |
|---|---|---|
| STATE OF WASHINGTON, | ) | No. 31616-5-III |
| | ) | |
| Respondent, | ) | |
| | ) | |
| v. | ) | UNPUBLISHED OPINION |
| | ) | |
| JESUS TORRES, | ) | |
| | ) | |
| Appellant. | ) | |

LAWRENCE-BERREY, J. — Jesus Torres appeals his conviction for possession of a stolen vehicle and first degree driving with a suspended license. He contends that the State failed to prove an essential element of possession of a stolen vehicle, specifically, that he knew the mini-motorcycle was stolen. He also contends that the written procedure for peremptory challenges violated his right to a public trial and that there was no evidence to support the restitution award. He finally contends that there was no evidence to support the restitution award. We reject Mr. Torres's first two contentions, hold that he waived the third, and affirm.

FACTS

On October 2, 2012, Michael Horton and his coworker, Ricardo Campos, Jr., were working in a commercial building in Kennewick when Mr. Campos saw a man driving a mini-motorcycle that resembled one taken from Mr. Horton's home on September 12, 2012. The driver saw Mr. Horton and Mr. Campos watching him and drove away from their location. Mr. Horton followed the driver and called police.

Benton County Police Officer Christopher Littrell investigated and stopped Mr. Torres on the mini-motorcycle. Mr. Torres told police that it belonged to a friend who had built it from the ground up.

Mr. Torres's friend, Jeremy Hendricks, testified that acquaintances named Dustin and Brittany left the bike with him for repairs about two weeks before Mr. Torres's arrest. Mr. Hendricks did not know the last names of the couple. Mr. Hendricks testified that he was an uncertified mechanic and that he was asked to fix the throttle cable. He said that he sometimes builds devices from spare parts, but had never built a motorcycle of this type. When he received the mini-motorcycle, it was assembled.

Mr. Hendricks testified that neither he nor Mr. Torres knew the bike was stolen. Mr. Hendricks said he was keeping the bike until the couple could pay for the repairs. Both men took the bike for a test drive.

Although Mr. Hendricks knew that Mr. Torres was arrested in October, Mr. Hendricks did not speak with police about the mini-motorcycle until approached by Officer Littrell in January. Officer Littrell testified that Mr. Hendricks told him the bike was dropped off by someone named Nick. Mr. Hendricks said he could not provide a telephone number or street address for the person who gave him the mini-motorcycle.

Mr. Horton, the owner of the mini-motorcycle, testified that he recognized the bike from the tear in the seat, oil smudges, vice grips where the shifter was broken, and residue from the electrical tape on the gas tank. Mr. Horton said he paid $200 for the bike, which was below market value. The court admitted Mr. Horton's photographs of the mini-motorcycle he lost and police photographs of the mini-motorcycle Mr. Torres was found riding. The defense agreed that the bike was stolen and Mr. Torres was riding it, but argued that there was no evidence that he knew it was stolen.

During jury selection, the exercise of peremptory challenges occurred on paper. The trial court instructed counsel on the process for writing down the challenges. After each side questioned the potential jurors, the court instructed the attorneys to exercise their peremptory challenges. The court then concluded, "All right. That concludes peremptory challenges. I'll check with the clerk to verify my notes are correct." Report of Proceedings (RP) (Feb. 4, 2013—Jury Voir Dire) at 68.

3

A brief discussion was held off the record. Then, the trial court individually excused the challenged jurors, identifying each challenged juror by name and number. A jury roster filed with the court the following day listed the peremptory challenges exercised by each side. Additionally, a different list described the outcome for each juror, including a "CD" designation for those excused on challenges by the defense and "CP" for those excused by the State. Clerk's Papers at 45-46. The trial minutes listed the peremptory challenges, but did not reveal which side challenged which juror.

The jury found Mr. Torres guilty of both possession of a stolen vehicle and first degree driving with a suspended license. The court sentenced Mr. Torres to 29 months for possession of the stolen vehicle conviction and 8 months on the driving with a suspended license conviction, to be served concurrently. The court also ordered Mr. Torres to pay legal financial obligations, including $503.35 in restitution. Mr. Torres did not object to restitution.

Mr. Torres timely appealed.

## ANALYSIS

A. *Whether the State presented sufficient evidence that Mr. Torres knew that the mini-motorcycle was stolen*

When sufficiency of the evidence is challenged, appellate courts review the record to determine whether the evidence is sufficient for a reasonable person to find every

4

element of the crime beyond a reasonable doubt. *State v. Green*, 94 Wn.2d 216, 221, 616 P.2d 628 (1980) (quoting *Jackson v. Virginia*, 443 U.S. 307, 319, 99 S. Ct. 2781, 61 L. Ed. 2d 560 (1979)). "A claim of insufficiency admits the truth of the State's evidence and all inferences that reasonably can be drawn therefrom." *State v. Salinas*, 119 Wn.2d 192, 201, 829 P.2d 1068 (1992).

Sufficient means more than a mere scintilla of evidence; there must be that quantum of evidence necessary to establish circumstances from which the jury could reasonably infer the fact to be proved. *State v. Fateley*, 18 Wn. App. 99, 102, 566 P.2d 959 (1977). Circumstantial evidence is considered as reliable as direct evidence. *State v. Myers*, 133 Wn.2d 26, 38, 941 P.2d 1102 (1997).

A person is guilty of possession of a stolen vehicle if he or she possesses a stolen motor vehicle. RCW 9A.56.068(1). Knowledge that the property is stolen is an essential element of possession of stolen property. RCW 9A.56.140. Merely being in possession of the stolen property is insufficient to support a conviction for the offense, but possession coupled with slight corroborative evidence is sufficient to prove guilty knowledge. *State v. Couet*, 71 Wn.2d 773, 775, 430 P.2d 974 (1967). Corroborative evidence may include flight or the absence of a plausible explanation for legitimate

5

possession. *State v. Womble*, 93 Wn. App. 599, 604, 969 P.2d 1097 (1999). Here, sufficient evidence supports Mr. Torres's conviction for possession of a stolen vehicle.

First, Mr. Hendricks gave inconsistent statements about who gave him the mini-motorcycle, and he could not give the owner's identifying information to the police. While this does not establish that Mr. Torres knew about the mini-motorcycle's origins, the jury was entitled to draw an inference that Mr. Hendricks's possession was unlawful and that Mr. Hendricks's friend, Mr. Torres, also knew that the possession was unlawful.

Second, the State produced evidence of flight through Mr. Horton. Mr. Horton testified about seeing Mr. Torres on the mini-motorcycle: "That's when he seen that we were watching him and he tried to ride away." RP (Feb. 5, 2013) at 70. Mr. Torres argues that driving away is what one does while riding. However, it is for the jury, not the reviewing court, to decide what inferences to draw from the witness's testimony. We conclude that sufficient evidence exists for a reasonable trier of fact to find beyond a reasonable doubt that Mr. Torres knew the mini-motorcycle was stolen.

B.      *Whether the trial court violated Mr. Torres's right to a public trial by conducting written peremptory challenges*

Mr. Torres contends that his convictions should be reversed because the trial court violated his right to a public trial by conducting peremptory challenges in writing.

Whether the right to a public trial has been violated is a question of law that we review de novo. *State v. Sublett*, 176 Wn.2d 58, 70, 292 P.3d 715 (2012).

The Sixth Amendment to the United States Constitution and article I, section 22 of the Washington Constitution guarantee a criminal defendant the right to a public trial. In addition, the Washington Constitution promises that "[j]ustice in all cases shall be administered openly, and without unnecessary delay." CONST. art I, § 10.

The right to a public trial extends to voir dire of prospective jurors. *State v. Wise*, 176 Wn.2d 1, 11, 288 P.3d 1113 (2012). However, not every interaction between the court, counsel, and defendant will implicate the public trial right or constitute a closure. *Sublett*, 176 Wn.2d at 71. To determine whether public trial rights attach, courts apply the "experience and logic" test adopted in *Sublett*. *Sublett*, 176 Wn.2d at 72-73. The experience prong asks if historically, the place and process were open to the public. *Id.* at 73 (quoting *Press-Enterprise Co. v. Superior Court*, 478 U.S. 1, 8, 106 S. Ct. 2735, 92 L. Ed. 2d 1 (1986)). The logic prong asks if public access plays a significant positive role in the functioning of the particular process in question. *Id.* (quoting *Press*, 478 U.S. at 8). Both questions must be answered in the affirmative for public trial rights to attach.

*Id.* And, once public trial rights attach, the trial court must openly consider the five *Bone-Club*[1] factors before closing the proceeding to the public. *Sublett*, 176 Wn.2d at 73.

Directly contrary to Mr. Torres's argument, this court held in *State v. Love*, 176 Wn. App. 911, 920, 309 P.3d 1209 (2013), *review granted*, 181 Wn.2d 1029, 340 P.3d 228 (2015) that the exercise of peremptory challenges in a side bar conference does not violate the public trial right. Applying the experience and logic test from *Sublett*, this court found no evidence that peremptory challenges were historically made in public. *Id.* at 918. The court also found that the public interests were satisfied by recording the challenges in the written public record. *Id.* 918-19.

The holding in *Love* has been adopted by separate divisions of this court. Division Two of this court, addressing facts identical to the ones presented here, determined that a defendant's public right to trial was not violated when counsel conducted written peremptory challenges. *State v. Webb*, 183 Wn. App. 242, 247, 333 P.3d 470 (2014), *review denied*, 182 Wn.2d 1005, 342 P.3d 327 (2015).

We adhere to the rulings in *Love* and *Webb*. The trial court's exercise of written peremptory challenges in an open courtroom did not violate Mr. Torres's right to a public

---

[1] *State v. Bone-Club*, 128 Wn.2d 254, 906 P.2d 325 (1995).

trial. The public's open access to voir dire proceedings and the timely record made of the peremptory challenges protected the public's right and the open administration of justice.

C.      *Whether Mr. Torres's restitution order must be reversed*

The restitution order requires Mr. Torres to pay Mr. Horton $503.35. Mr. Torres argues that the restitution order should be vacated because the State failed to present any evidence of the amount of loss. At trial, the owner testified that the mini-motorcycle was returned to him damaged. However, there was no evidence of the cost of repair. The only testimony touching on value was the owner's testimony that he had purchased the used mini-motorcycle for $200. The State argues that Mr. Torres is precluded from raising this issue on appeal because he failed to preserve it by objecting below.

Where a defendant fails to object to the amount of restitution at the trial court, this is deemed a waiver of the issue and prevents its review on appeal. *State v. Branch*, 129 Wn.2d 635, 651, 919 P.2d 1228 (1996) (citing *State v. Harrington*, 56 Wn. App. 176, 181, 782 P.2d 1101 (1989) (failure to object to amount of restitution order at trial precluded review on appeal).

Defendant attempts to circumvent the above rule by citing RAP 2.5(a)(2), which provides, "a party may raise the following claimed error[ ] for the first time in the appellate court: . . . (2) failure to establish facts upon which relief can be granted."

9

In *State v. Moen*, 129 Wn.2d 535, 537-38, 919 P.2d 69 (1996), the defendant failed to object to a restitution order that the sentencing court entered after the statutory time for entering such orders expired. The *Moen* court discussed whether to permit the defendant to raise the issue on appeal, despite not having objected below. The *Moen* court noted that the purpose of requiring an objection at the trial level was to give the sentencing court the opportunity to correct its error. Because an objection would not have given the sentencing court the opportunity to correct its error, i.e., the order still would have been entered late, the *Moen* court held that it was proper to review the restitution order despite the lack of objection below. *Id.* at 547. Here, unlike *Moen*, had Mr. Torres raised a timely objection, the trial court could have corrected its error either by inquiring into the factual basis for the restitution amount or by scheduling a restitution hearing. We distinguish *State v. Moen*, follow *State v. Branch*, and hold that Mr. Torres's failure to object below precludes our review of the restitution order.

MR. TORRES'S REQUEST TO EXPAND HIS ASSIGNMENTS OF ERROR

This appeal was submitted for decision without oral argument on October 24, 2014. On March 11, 2015, Mr. Torres filed a motion to file supplemental brief with supplemental assignment of error, and he also filed a supplemental brief. Mr. Torres's motion is motivated by Division Two's recent decision in *State v. Satterthwaite*,

No. 45732-6-II (Wash. Ct. App. March 10, 2015). There, Division Two held that the information charging possession of a stolen motor vehicle was constitutionally deficient because it failed to include an element of the offense found in RCW 9A.56.140(1), i.e., "withhold or appropriate."

Mr. Torres did not raise this issue at the trial court level nor did he raise this issue at the appellate court level through an original assignment of error. He suggests that this court must provide one of two means of effective relief. Either we must permit him to file a supplemental brief so he can raise this issue, or else we must allow him to argue ineffective assistance of counsel for his counsel's failure to timely raise it.

We decline to provide either means of relief. First, there is no rule of appellate procedure that allows an appellant to broaden his assignments of error months after briefing is complete. Rather, the rule requires assignments of error to be made in the opening brief. RAP 10.3(a)(4). Second, Mr. Torres does not cite any authority for his argument that his counsel's failure to anticipate a new rule of law constitutes ineffective assistance of counsel. The new rule is not obvious. Although we decline to agree or disagree with the new rule, we recognize the tension with, and the effort Division Two made to distinguish, *State v. Johnson*, 180 Wn.2d 295, 325 P.3d 135 (2014).

We decline to request additional briefing on this issue because Mr. Torres has failed to make a colorable argument that he received ineffective assistance of counsel in this instance. His motion to file a supplemental brief for the purpose of making a new assignment of error is denied.

## STATEMENT OF ADDITIONAL GROUNDS

In his statement of additional grounds for review, Mr. Torres contends that his counsel was ineffective. He maintains that his attorney failed to introduce jailhouse telephone calls from the person who let Mr. Torres borrow the mini-motorcycle, telling Mr. Torres that he did not know that the mini-motorcycle was stolen.

To establish ineffective assistance of counsel, a defendant must prove both, "(1) defense counsel's representation was deficient, *i.e.*, it fell below an objective standard of reasonableness based on consideration of all the circumstances; and (2) defense counsel's deficient representation prejudiced the defendant, *i.e.*, there is a reasonable probability that, except for counsel's unprofessional errors, the result of the proceeding would have been different." *State v. McFarland*, 127 Wn.2d 322, 334-35, 899 P.2d 1251 (1995).

While the prosecutor referenced jailhouse telephone calls between Mr. Torres and Mr. Hendricks, the record does indicate that Mr. Hendricks said that he did not know the

12

motorcycle was stolen. Even if Mr. Torres could show that the telephone calls contained the alleged information, Mr. Torres's attorney would not be deficient for failing to introduce the calls. Mr. Hendricks's admission during the telephone conversation was duplicative of his testimony presented at trial. According to Mr. Torres, the telephone calls established that Mr. Hendricks did not know the mini-motorcycle was stolen. However, Mr. Hendricks personally testified to this same fact at trial. Counsel's performance was not deficient. Mr. Torres fails to establish ineffective assistance of counsel.

We affirm.

A majority of the panel has determined this opinion will not be printed in the Washington Appellate Reports, but it will be filed for public record pursuant to RCW 2.06.040.

_____
Lawrence-Berrey, J.

WE CONCUR:

_____          _____
Korsmo, J.                                Fearing, J.

13